Hist. Cell Site SW; Rev. 5/19

FILED IN CHAMBERS
U.S.D.C. ATLANTA

Date: Aug 14 2024

KEVIN P. WEIMER , Clerk

By: Kari Butler

Deputy Clerk

# UNITED STATES DISTRICT COURT

Northern District of Georgia

In the Matter of the Search of:

**Information associated with the cellular device assigned phone number +1-404-573-2461 that is stored at the premises controlled by T-Mobile**

**APPLICATION & AFFIDAVIT FOR SEARCH WARRANT**

CASE NUMBER: 4:24-mc-85

I, Corey Wright, depose and say under penalty of perjury as follows:

I am a(n)  Task Force Officer of the DEA, and have reason to believe that in the property described as:

- **Information associated with the cellular device assigned phone number +1-404-573-2461 that is stored at the premises controlled by T-Mobile, 4 Sylvan Way, Parsippany, New Jersey 07054,**

there is now concealed certain property, certain data, and certain information, namely:

**See Attachment A**

that constitutes evidence of the commission of a criminal offense, concerning violations of Title 21, United States Code, Section(s) 841 and 846, over which the United States District Court for the Northern District of Georgia has jurisdiction. *See* 18 U.S.C. §§ 2703(c)(1)(A), 2711(3)(A); FED. R. CRIM. P. 41.

The facts to support a finding of Probable Cause are as follows:

**SEE ATTACHED AFFIDAVIT.**

*Corey J Wright*
Signature of Affiant

DEA Task Force Officer Corey Wright

Sworn to me by telephone pursuant to Federal Rule of Criminal Procedure 4.1.

| August 14, 2024 | at | Rome, Georgia |
|---|---|---|
| Date | | City and State |

WALTER E. JOHNSON
UNITED STATES MAGISTRATE JUDGE
Name and Title of Judicial Officer

*Walter E. Johnson*
Signature of Judicial Officer

AUSA Nicholas L. Evert /404-581- 6061 /
nicholas.evert@usdoj.gov

Rev. 11/22 (Hist. Cell Site Aff.)

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Corey J. Wright, depose and say under penalty of perjury as follows:

## A.  Agent Experience

1.  As a Task Force Officer of the DEA, I am an "investigative or law enforcement officer of the United States" within the meaning of 18 U.S.C. § 2510(7). Therefore, I am empowered to conduct investigations of and to make arrests for offenses enumerated in 18 U.S.C. § 2516.

2.  I have been a law enforcement officer since December of 2016. I am currently employed with the Floyd County Police Department and hold the rank of Sergeant. I am currently assigned to the DEA Atlanta Field Division, Rome Post of Duty. During my time as a law enforcement officer, I have received training in various aspects of the criminal justice field. This training ranges from basic investigative courses, motor vehicle law, and tactical operations such as SWAT operator levels I and II. Prior to and during my assignment with DEA, I have participated in numerous search warrants pertaining to the seizure of contraband and evidence, including warrants resulting in the seizure of illegal drugs, drug paraphernalia, drug records, and proceeds of drug trafficking. I have debriefed numerous defendants, informants, and witnesses who possessed personal knowledge regarding drug trafficking organizations. I also have become familiar with and utilized investigative techniques such as, without limitation, electronic and physical surveillance, general questioning of witnesses, use of search warrants, use of informants, use of grand jury subpoenas, use of pen registers, and use of undercover agents. Based on my training and experience in the investigation of drug traffickers, and based upon interviews I have conducted with

defendants, informants, and other witnesses and participants in drug trafficking activity, I am familiar with the ways in which drug traffickers conduct their business. My familiarity includes the various means and methods by which drug traffickers import and distribute drugs; their use of cellular telephones to facilitate drug activity; and their use of numerical codes and code words to conduct drug transactions. I also am familiar with the ways that drug traffickers conceal, convert, transmit, and transport their drug proceeds, including, without limitation, the use of carriers to transport currency and proceeds, the use of third parties to purchase or hold title to assets, and the use of off-shore accounts and the use of computer or smart phone applications for the transfer of virtual or crypto-currency.

## B. Subject Telephone

3. Pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c)(1)(A), I submit this Affidavit in support of a warrant for information and data associated with the:

- *Subject Telephone*: a T-Mobile cellular telephone assigned phone number +1-404-573-2461, subscribed in the name of Fransisco Perez Lopez and believed to be use by Ruben Daniel HERNANDEZ-Huerta.

I believe the information associated with the Subject Telephone is stored at premises controlled by wireless telephone service provider, T-Mobile USA located at 4 Sylvan Way, Parsippany, New Jersey 07054.  As a result, this affidavit is made

in support of an application for a search warrant requiring T-Mobile to disclose subscriber and cell site information (as fully described in Attachment A). [1]

4. I submit that probable cause exists to believe that violations of 21 U.S.C. §§ 841 & 846 have been committed by Ruben Daniel HERNANDEZ-Huerta. As a result, probable cause also exists to search the information and data associated with the Subject Telephone for evidence, instrumentalities, and fruits of these crimes.

**C. Cellular Telephones & Cell Site Data**

5. Based on my training and experience, I have learned that individuals who participate in crimes often use cell phones and online tools to facilitate and plan their criminal activity and to avoid detection by law enforcement. Likewise, I have learned that individuals commonly use cell phones before, during, and after criminal activity to coordinate the commission of those crimes.

6. In my training and experience, I have learned that T-Mobile is a telecommunications company that provides cellular telephone access to the public. Further, I know that wireless providers such as T-Mobile typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method/s of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service. I also

---

[1] This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction," as defined in 18 U.S.C. § 2711(3). *See* 18 U.S.C. § 2703(d). Specifically, the Court has jurisdiction over the offense/s being investigated (*i.e.*, 21 U.S.C. §§ 841 & 846). *See* 18 U.S.C. § 2711(3)(A)(i). Furthermore, T-Mobile is a provider of electronic communications services, as defined in 18 U.S.C. § 2510(15).

know that wireless providers such as T-Mobile typically collect and retain information about their subscribers' use of the wireless service, such as records about calls, text messages, and data transmissions sent or received by a particular phone and other transactional records, in their normal course of business.  In my training and experience, this information may constitute evidence of the crime/s under investigation because the information can be used to identify the Subject Telephone's user or users and may assist in the identification of co-conspirators and/or victims.

7. In addition, I know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the physical location of the cellular telephones to which they provide service. I know that T-Mobile can collect cell site data (also known as tower/face or cell tower/sector information).

8. Cell site data identifies the cell towers (*i.e.*, antenna towers covering specific geographic areas) that received a radio signal from the cellular phone and, in some cases, identifies the sector (*i.e.*, faces of the towers) to which the phone connected. Even in urban areas, these towers are often a half-mile or more apart and can be 10 or more miles apart in rural areas. Further, the tower closest to a wireless device does not necessarily serve every call made to or from that device. I know that for each transmission a cellular device makes, its wireless service provider can typically determine: (a) the date and time of the communication; (b) the telephone numbers involved, if any; (c) the cell tower to which the customer connected at the beginning of the communication; (d) the cell tower to which the customer connected at the end of the communication; and (e) the duration of the

communication.  I also know that wireless providers (such as T-Mobile), usually collect and retain cell site data for cellular devices to which they provide service in the normal course of their business. A preservation request was sent to T-Mobile on July 26, 2024. T-Mobile communicated via email on July 30, 2024, that the preservation request had been successfully submitted.

9.   Finally, I know that many cell phone service providers in the ordinary course of business maintain more precise location information that tends to approximate a cell phone's location and/or range from accessed cell towers and sectors during a call or data transmission. In the telecommunication industry, this type of information is generically known as "advance timing data" – but is also referred to as Network Event Location Operating System, per call measurement, Real Time Tool/RTT, or timing advance data.

**D.  Sources of Information**

10. The information set forth in this affidavit is based on my personal observations and knowledge, and may also be based on: (a) my training and experience, (b) information obtained from other individuals participating in the investigation, (c) reports and/or business records, (d) recorded conversations or text messages, and (e) communications with other individuals who have personal knowledge of the events and circumstances described herein. Since this affidavit is being submitted for the limited purpose of establishing probable cause, I have not included in this affidavit every detail of the investigation. Rather, I have set forth facts that I believe are sufficient to establish probable cause for the issuance of the requested search warrant. Unless specifically indicated otherwise, any

conversations and statements described in this affidavit are related in substance and in part only.

**E.   Probable Cause Basis**

**Discovery of Methamphetamine Conversion Laboratory**

11.       On July 20, 2024, at approximately 1:10 p.m., Floyd County, Georgia, e911 Dispatch received a 911 phone call advising that a white male (wearing shorts and no shirt) pointed a rifle at the caller and stole the caller's vehicle at the Coosa Waste Water Treatment facility, located at 650 Ausburn Road, Rome, Georgia 30165 (in the Northern District of Georgia).  Floyd County Police Department officers began responding to the scene immediately. The stolen vehicle was a red 2014 Nissan Altima bearing Georgia license plate number RFL5928.

12.       While officers were *en route* to 650 Ausburn Road, Floyd County e911 received a separate call advising that, a few minutes prior to the Nissan being stolen, the caller had observed a male walking on Ausburn Road carrying what the caller described as an AR-15 rifle. The caller went on to state that they had heard one shot and then approximately five rapid shots a few minutes later. The caller described the male as "Mexican" and between the ages of 25 and 30 years old.

13.       Floyd County Officers arrived at 650 Ausburn Road at approximately 1:26 p.m. and addressed the victim. They also relayed information regarding the suspect and stolen vehicle to surrounding counties.

14.       Due to multiple shots being reported in the area, Floyd County Police Department Officer Camron Roubieu and Sergeant Dan Bickers began going door to door checking the welfare of people residing in the area. Roubieu and Bickers

6

arrived at 848 Ausburn Road, Rome, Georgia, and observed that the front door of the residence was open. As the officers approached the residence, they observed the glass on the storm door appeared to be broken as if it had been shot. This observation led Officer Roubieu and Sgt Bickers to suspect there may be gunshot victims inside the residence.

15.     Officer Roubieu and Sgt Bickers entered and cleared the residence pursuant to exigent circumstances presented by the shots being fired in the area. While clearing the residence and ensuring there were no injured people, Officer Roubieu and Sgt Bickers observed multiple large plastic totes containing a brown substance covered in white paint. They also reported cans of acetone, multiple "hot plates," a small electric device often used at campsites to cook with, and several large pots and buckets containing what appeared to be the same substance observed in the large plastic totes.

16.     In addition to the visual observations, Officer Roubieu and Sgt Bickers detected a strong chemical odor emitting from inside the residence that they suspected was coming from the containers of brown liquid and white paint.

17.     Officer Roubieu and Sgt Bickers then exited the residence, secured the property to prevent anyone from entering, and advised me via cell phone of their findings. I advised Roubieu that members of the Rome HIDTA Post of Duty would respond due to the possibility of the items observed being a clandestine methamphetamine conversion lab.

18.     At approximately 4:51 p.m., TFO Matt Meyers and I responded to the scene at 848 Ausburn Road and were briefed by Roubieu and Bickers on the

totality of the situation. TFO Meyers and I conducted a field test of the brown substance located inside one of the plastic totes. The field test indicated a positive result for methamphetamine.

19.     At approximately 6:20 p.m., I secured a state search warrant for 848 Ausburn Road through a Floyd County Magistrate Court. While executing the warrant at the residence, seven samples of suspected methamphetamine were seized from different containers for further testing at a DEA laboratory.

20.     On July 22, 2024, Atlanta-Carolinas HIDTA Intel Analyst (IA) Denisse Rodriguez submitted an administrative subpoena to Georgia Power in reference to 848 Ausburn Road. IA Rodriguez received the subpoena results on July 26, 2024. The results indicated that service was connected to 848 Ausburn Road on July 12, 2024.

**Arrest of Ruben Daniel HERNANDEZ-Huerta pursuant to traffic stop**

21.     While the investigative activity leading to the discovery of the methamphetamine conversion lab was taking place, information about the stolen vehicle, such as the vehicle description and license plate number, was relayed to law enforcement agencies surrounding Floyd County.

22.     At approximately 2:02 p.m. that same day, Carrollton Police Department Officer Jordan Preston received a "BOLO" ("be on the lookout") from Carroll County 911 for a red Nissan Altima bearing Georgia license plate number RFL5928. Carroll County 911 also advised that a male suspect operating the vehicle was likely armed and had been involved in an armed robbery.

23.    Carrollton Police Department Officer Dustin Krish received the same information and searched a license plate camera database for Georgia license plate RFL5928. The search indicated the stolen Nissan was in the area of Newnan Street and Dixie Street in Carrollton, Georgia. Officer Krish advised Officer Preston of the search results pertaining to the stolen Nissan.

24.    At approximately 2:04 p.m., Officer Preston observed the Nissan traveling west on Bankhead Highway in Carrollton, Georgia. Officer Preston advised 911 and other officers that he had located the stolen Nissan and was awaiting backup before initiating a traffic stop.

25.    At approximately 2:05 p.m., Officer Preston initiated a traffic stop with the Nissan Altima at a Marathon gas station located at 813 Bankhead Highway, Carrollton, Georgia 30117. Officer Preston verified that the tag matched that of the stolen vehicle (Georgia license plate number RFL5928). Knowing that the suspect was likely armed and had committed the felony of theft by taking a motor vehicle, Officers Preston and Krish drew their service weapons and instructed the suspect to exit the vehicle. The suspect exited the vehicle and laid on the ground per the officers' instructions. Officer Preston then placed the suspect in handcuffs, searched him, and secured him in the back seat of his patrol vehicle. Officer Preston reported the suspect was shirtless and wearing wet shorts.

26.    The suspect matched the second 911 caller's description of the male walking on Ausburn Road carrying a rifle. The suspect's shorts were stained with white paint. Based on my visual examination of the paint found in the residence and the paint observed in a picture of the suspect during his arrest, the color of the

paint on the shorts was identical to the color of the paint found inside 848 Ausburn Road.

27.    Officer Preston began attempting to identify the suspect. There was a significant language barrier between officers and the suspect. Officer Preston obtained the name of "Ruban Daneal" with a date of birth of May 30, 1989. A GCIC query did not return with an identity. The suspect advised Officer Preston that he had never had an identification in the United States.

28.    A search of the vehicle led to the discovery and seizure of a tan and black Palmetto State Armory AR-15 rifle (serial number: SCD576188). Officer Preston reported the rifle had one round in the chamber and an empty magazine. Officer Preston also discovered and seized a blue Samsung cell phone (**Subject Telephone**) which was placed on the ground by the suspect when exiting the vehicle. On July 24, 2024, Magistrate Judge Walter E. Johnson of the Northern District of Georgia signed a search warrant for the Subject Telephone (4:24-MC-81). Based on a subsequent search of the Subject Telephone, agents were able to determine that its phone number is +1-404-573-2461.

29.    Officer Preston then transported the suspect to the Carroll County Jail, where he was met by Carroll County Jail Officer Bone who utilized a fingerprint scanner to attempt to identify the suspect. The fingerprint scanner was unable to identify the suspect.

30.    The Carroll County Jail staff provided a translator to assist in the identification process of the suspect as part of booking the suspect. With the assistance of a translator, the suspect was identified as Ruben Daniel

HERNANDEZ-Huerta. HERNANDEZ stated that he was an illegal immigrant and had only been in the United States for three months.

31.    HERNANDEZ was booked into the Carroll County Jail on the state charge of Theft by Receiving Stolen Property. A warrant was also secured in Floyd County for the state charge of Theft by Taking Motor Vehicle by Floyd County PD investigator Carlos Ribot.

32.    Officer Preston then met with Investigator Ribot at the Carrollton Police Department, where Ribot took custody of the AR-15 rifle and the **Subject Telephone** which had been seized at the traffic stop.

**F. Conclusion**

33.  I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41**.** I further request that the Court direct T-Mobile to disclose to the DEA any information described in Attachment A for the time period April 1, 2024, to July 21, 2024 that is within its possession, custody, or control.  Given that the warrant will be served on T-Mobile, who will then compile the requested records at a time convenient to it, good cause exists to permit the execution of the requested warrant at any time in the day or night. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

Rev. 11/22 (Hist. Cell Site Aff.)

# ATTACHMENT A

**Information to be disclosed by Service Provider & seized by the United States**

For the account identified as and/or associated with:

- *Subject Telephone*: a T-Mobile cellular telephone assigned phone number +1-404-573-2461, subscribed in the name of Fransisco Perez LOPEZ and believed to be use by Ruben Daniel HERNANDEZ-Huerta.

the provider, or any other entity providing wire or wireless communication service in the United States whose assistance may facilitate execution of the warrant, is required to disclose to the government the following records and information associated with the account, if available, for the time period from April 1, 2024 to July 21, 2024:

1. Names (including subscriber names, user names, and screen names);

2. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

3. Local and long-distance telephone connection records and/or call, text message, and data transmission detail records;

4. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol addresses) associated with those sessions;

5. Length of service (including start date) and types of service utilized;

6. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers, Mobile Electronic Identity Numbers, Mobile Equipment Identifier, Mobile Identification Numbers, Subscriber Identity Modules, International Mobile Subscriber Identifiers, or International Mobile Equipment Identities);

7. Other subscriber numbers or identities (including the registration Internet Protocol address);

8.  Means and source of payment for such service (including any credit card or bank account number) and billing records;

9.  Historical cell site/sector data, including: (a) the cell sites to which the Subject Telephone sent its signal when a call, text message, or data transmission was made, placed, or received; (b) the cell sites through which the call or data transmission were routed when the call or data transmission ended; and (c) the cell sites during a call or data transmission, if available; and

10. Historical advance timing data (also called Network Event Location Operating System, per call measurement, Real Time Tool/RTT, or timing advance data) stored in the ordinary course of business that tends to approximate the Subject Telephone's location and/or range from accessed tower and sectors.

The provider shall also provide an engineering map showing cell-site tower locations, sectors, and orientations. All records described above shall be provided in an electronic format within 10 days of the date of this warrant and shall be accompanied by a Business Records Certification.

Rev. 11/22 (Hist. Cell Site Aff.)

## <u>CERTIFICATE OF AUTHENTICITY OF RECORDS</u>

      I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct.  I am employed by T-Mobile, and my title is _____.  I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved.  I state that the records attached hereto are true duplicates of the original records in the custody of T-Mobile.

      The attached records consist generally of _____ _____ [describe records]. I further state that:

1. All records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of T-Mobile, and they were made by T-Mobile as a regular practice; and

2. To the extent the records were generated by an electronic process or system, such records were generated by electronic process or system of T-Mobile that produces an accurate result, to wit:

   a. The records were copied from electronic device/s, storage medium/s, or file/s in the custody of T-Mobile in a manner to ensure that they are true duplicates of the original records; and

   b. The process or system is regularly verified by T-Mobile, and at all times pertinent to the records certified here the process and system functioned properly and normally.

    I further state that this certification is intended to satisfy Federal Rules of Evidence 902(11) and 902(13).


_____    _____

Date               Signature                Phone Number